**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **COSETTE GRANT-OVERTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:20-cv-00128-HAB-SLC** |
| | ) | |
| **FORT WAYNE URBAN LEAGUE,** | ) | |
| **INC.,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Defendant National Urban League, Inc. ("NUL"), filed a motion to dismiss this

employment discrimination action under Federal Rule of Civil Procedure 12(b)(2) for lack of

personal jurisdiction.  (ECF 17).  Now before the Court is a motion filed by Plaintiff Cosette

Grant-Overton, seeking an extension of time to conduct discovery into personal jurisdiction

before responding to NUL's motion to dismiss.  (ECF 26).  NUL filed a timely response in

opposition to the motion on June 16, 2020, and Grant-Overton belatedly filed a reply brief on

June 26, 2020.[1]  (ECF 30, 32).  Therefore, the motion is ripe for ruling.  For the following

reasons, Grant-Overton's motion for an extension of time to perform jurisdictional discovery

will be GRANTED.

*A.  Factual and Procedural Background*

Grant-Overton, an African-American female, was hired on May 21, 2018, to serve as the

Chief Executive Officer of Defendant Fort Wayne Urban League, Inc. ("FWUL"), a not-for-

---

[1] Grant-Overton does not assert excusable neglect for her untimeliness in filing the reply brief.  *See* Fed. R. Civ. P. 6(b)(1)(B).  Nonetheless, the reply brief does not add any material assertions that were not already included in the motion, and thus, the Court's outcome would be the same even if the reply brief were disregarded.

profit organization located in Fort Wayne, Indiana. (ECF 4 at 4; ECF 18 at 6). Grant-Overton was terminated from that position on May 2, 2019. (ECF 4 at 4).

On March 2, 2020, Grant-Overton filed a complaint against FWUL and NUL, alleging that they, as her former employers, discriminated and retaliated against her based on: (1) her race and sex, (2), for refusing to go along with illegal financial practices, and (3) for reporting a serious health condition for which she intended to take leave; all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Family Medical Leave Act, and the Age Discrimination in Employment Act. (ECF 4). The Court held a preliminary pretrial conference on April 23, 2020, setting a discovery deadline of March 15, 2021. (ECF 15, 16).

On May 5, 2020, Defendant NUL, a New York not-for-profit organization, filed a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. (ECF 17). In its memorandum, which is supported by an affidavit of NUL's Senior Vice President of Affiliate Services, NUL argues that it has no presence in the State of Indiana to give rise to general jurisdiction. (ECF 18 at 1; ECF 18-1 ¶¶ 1, 4). NUL further contends there is no basis for the Court to exercise specific jurisdiction over it, as Grant-Overton's claims arise from her employment by FWUL, one of NUL's 90 affiliates. (ECF 18 at 1-2; ECF 18-1 ¶¶ 6, 10-13). NUL emphasizes that under its Affiliate Agreement with FWUL, FWUL has certain reporting obligations to NUL and NUL has the right to conduct periodic audits of FWUL, but FWUL has its own board of directors, makes its own employment and operational decisions independent of NUL, and bears the sole responsibility for its own day-to-day operations. (ECF 18 at 6; ECF 18-1 ¶¶ 8-10). NUL contends that it did not participate in FWUL's decision to hire or fire Grant-Overton. (ECF 18 at 7, 12-13; ECF 18-1 ¶¶ 12-13).

2

On May 20, 2020, the Court granted an unopposed motion for extension of time filed by Grant-Overton one day earlier, affording her to and including June 2, 2020, to respond to NUL's motion to dismiss.  (ECF 22-24).  On June 2, 2020, NUL filed the instant motion seeking a second extension—this time requesting sixty days within which to "conduct discovery dealing with the contacts that NUL had with FWUL pertaining to the employment of the Plaintiff, as well as the termination of the Plaintiff, so that Plaintiff may meet the allegations of NUL . . . ." (ECF 26 ¶ 4).

## B.  Applicable Legal Standard

"In order for personal jurisdiction to be proper, a defendant must have established minimum contacts with the forum state."  *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 934 (7th Cir. 2000)).  "A defendant's contacts with a forum state may be related or unrelated to the facts forming the basis for the lawsuit."  *Id.* (citation omitted).  "Contacts related to the subject matter of the lawsuit may give rise to specific personal jurisdiction, that is, jurisdiction over the person for a case arising from those contacts."  *Id.* (citations omitted).  "When the contacts with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter."  *Id.* (citations omitted).

It is "well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case."  *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D. Ind. 1998) (citation omitted).  "At a minimum, the plaintiff must establish a colorable

or prima facie showing of personal jurisdiction before discovery should be permitted." *Reimer Express World Corp.*, 230 F.3d at 946; *see also Sullivan v. Sony Music Entm't*, No. 14 CV 731, 2014 WL 5473142, at *5 (N.D. Ill. Oct. 29, 2014) (citing *Reimer Express World Corp.*, 230 F.3d at 946). That is, "[a] plaintiff must make a threshold or prima facie showing with some competent evidence demonstrating that personal jurisdiction *might* exist over a defendant in order to be entitled to jurisdictional discovery." *Andersen*, 179 F.R.D. at 241 (citations omitted). In considering a plaintiff's allegations concerning personal jurisdiction, the court must "read the complaint liberally, in its entirety, and with every inference drawn in favor of [the plaintiff]." *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006) (citation omitted).

"It is within this Court's discretion to permit jurisdictional discovery." *Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) (citing *Reimer Express World Corp.*, 230 F.3d at 946). "Courts generally grant jurisdictional discovery if the factual record is at least ambiguous or unclear on the issue." *Sullivan*, 2014 WL 5473142, at *5 (citation omitted). "Thus, jurisdictional discovery is not warranted where jurisdiction is based only upon unsupported assertions of personal jurisdiction or where the defendant has provided affirmative evidence that refutes the plaintiff's assertion of jurisdiction." *Id.* (citation omitted); *see Ticketreserve, Inc.*, 656 F. Supp. 2d at 782-83 ("The standard is low, but a plaintiff's request will be denied if it is based only upon unsupported assertions of personal jurisdiction." (citation omitted)).

### C.  Discussion

Under the foregoing standard, the Court must assess whether, on this record, Grant-Overton has made a colorable showing that personal jurisdiction might exist over NUL in Indiana.  In her motion requesting time to perform discovery, Grant-Overton does not appear to suggest that NUL is subject to general personal jurisdiction in Indiana.  Rather, Grant-Overton alleges in her motion that NUL was "instrumental" in her hiring and firing, suggesting specific jurisdiction.  (ECF 26 ¶¶ 1, 2; ECF 32 ¶ 2).

"[S]pecific jurisdiction requires that the suit 'arise out of' or 'be related to' [a defendant's] minimum contacts with the forum state."  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d. 1272, 1277 (7th Cir. 1997); *see also GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).  "[T]o be relevant for personal jurisdiction, past contacts should either bear on the substantive legal dispute between the parties or relate to the operative facts of the case."  *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1024 (citing *RAR, Inc.*, 107 F.3d at 1278).  Thus, "the action must *directly arise* out of the specific contacts between the defendant and the forum state."  *Id.* (quoting *RAR, Inc.*, 107 F.3d at 1278).  "[I]t must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity."  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) (citations omitted) (stating that defendant must have "purposefully availed itself of the privilege of conducting activities within the forum state" (citations omitted)).  "In other words, the focus of the court's inquiry must be on the 'relationship among the defendant, the forum, and the litigation.'"  *Hollinger Int'l, Inc. v. Hollinger, Inc.*, No. 04 C 0698, 2005 WL 589000, at *17

5

(N.D. Ill. Mar. 11, 2005) (quoting *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990)).

Here, Grant-Overton named only FWUL in the caption of her Charge of Discrimination submitted to the Equal Employment Opportunity Commission.  (ECF 4 at 4).  However, in the body of the Charge and the narrative memorandum she attached to it, Grant-Overton claims that the hostility in the workplace that she experienced "was intensified following the 2017-2018 audit and [NUL] site visit."  (*Id.*).  She more particularly asserts:

> I was required according to [NUL] policy to report to the NUL the gross negligence of the board of directors which has led to insolvency of FWUL.  *That communication began in August 2018 (i.e. face-to-face, email correspondence, teleconferences and on-site meetings at FWUL and NUL headquarters with affiliate service team members and Marc Morial, NUL President and CEO[)] and necessitated monthly check-ins with various representatives of the NUL, including Marc Morial.*  Also, it is a requirement under the terms of affiliation/SWO (i.e. including reporting potential insolvency and shut down of affiliate) to NUL.

> The hostility in the workplace was further intensified following the 2017-2018 audit findings . . . , 2017-18 audit of the FWUL, the FWUL 2017-18 audit report and *NUL's April 2019 audit, evaluation, assessment during a 5 day site visit at the FWUL*, that consisted of an audit of the FWUL's financials 2012-18, assessment of FWUL board governance, compliance and FWUL programs and outcomes from exit interview of NUL to FWUL Board.  Additionally, since it was reported to NUL the prospect of FWUL closing in June 2019 due to no cash, NUL assessors did additional assessing that included a 30-day plan of action requirement.

(*Id.* at 7 (emphasis added)).  Grant-Overton further alleges:

> *NUL Rep came in Sept 2018* – board governance, fiscal etc. – she told board they need to 'step up their game and fundraise'. . . . [S]hared issues with NUL President and affiliate services August 2018-May 2019 and gave monthly updates . . . .  November 2018 Morial indicated he would have FWUL board and programs and affiliate assessed in 2019 consequent to our conversations about fiscal and board governance issues.  *Jan 2019 NUL informed that they were sending a team to evaluat[e] FWUL in April 201[9]. . . .  Consequent to . . . NUL 5 day audit/site visit (April, 2019)* . . . the exit interview that pointed out major flaws in board re: governance, fiscal, compliance and programs from 2012-2018,

> 'preceding current CEO' there were major concerns shared re: mismanagement
> and negligence.

(*Id.* at 13).  Grant-Overton additionally claims that NUL defamed her with respect to "[h]ow

NUL presented [her] termination to two affiliates," and that NUL later retaliated against her by

providing a negative reference to another affiliate who was considering hiring her.  (*Id.* at 14-

16).

Grant-Overton does not submit with her motion any specific evidence that would

establish a prima facie case of personal jurisdiction, which is a necessary threshold showing

before discovery will be allowed into personal jurisdiction.  *See Reimer Express World Corp.*,

230 F.3d at 946.  As such, Grant-Overton rests entirely on the assertions in her complaint,

Charge of Discrimination, and memorandum.  She contends that she needs to perform discovery

into NUL's contacts with FWUL as described in those documents to show that NUL was

"instrumental" in both her employment at FWUL and her subsequent termination from FWUL.

(ECF 26 ¶¶ 1, 2).

NUL, however, argues that Grant-Overton cannot rely solely on her unsupported

allegations to establish a prima facie case of personal jurisdiction, particularly where NUL has

provided affirmative evidence in the form of its officer's affidavit refuting Grant-Overton's

allegations.  (ECF 30 ¶¶ 7, 8); *see Sullivan*, 2014 WL 5473142, at *5.  However, while NUL

disclaims in its affidavit having any presence in Indiana other than holding a one-week national

conference in Indiana in July 2019, it at the same time admits that it sent NUL employees to

FWUL in April 2019.  In that regard, NUL states:

> In April 2019, pursuant to the Affiliate Agreement, NUL sent members of its
> affiliate services team to Fort Wayne to evaluate FWUL's operations.  This on-
> site audit lasted approximately five days.  It is consistent with the Affiliate

Agreement between NUL and FWUL and consists of a review of an affiliate's governance and fiscal practices.  Subsequent to the audit, NUL prepared an audit report that it sent to the FWUL Board that set forth NUL's findings and recommendations.  *NUL also had limited follow-up correspondence with FWUL's leadership regarding corrective measures that FWUL could implement to strengthen the organization*.

(ECF 18-1 ¶ 14 (emphasis added)).

As explained earlier, courts generally grant jurisdictional discovery "if the factual record is at least ambiguous or unclear on the issue."  *Sullivan*, 2014 WL 5473142, at *5 (citation omitted).  Here, NUL does not dispute Grant-Overton's assertion that she had ongoing communications with NUL on at least a monthly basis from August 2018 to May 2019, which included on-site meetings at FWUL; that NUL visited FWUL in April 2019 for a five-day visit; and that Grant-Overton was fired on the heels of NUL's April 2019 visit to FWUL, after NUL communicated with FWUL about "corrective measures that FWUL could implement to strengthen the organization."  (ECF 18-1 ¶ 14).  As such, the factual record is at least ambiguous as to whether this Court can exercise specific personal jurisdiction over NUL with respect to Grant-Overton's claims in this case.  "[D]iscovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction."  *Andersen*, 179 F.R.D. at 241 (citation omitted).  "In fact, a district court risks abusing its discretion by not allowing some limited discovery into the personal jurisdiction issue."  *Id*. (citation omitted).

Accordingly, Grant-Overton's motion will be granted for purposes of specific personal jurisdiction in that Grant-Overton will be permitted to conduct discovery into NUL's contacts and communications with FWUL pertaining to her employment and subsequent termination. (*See* ECF 26 ¶ 4).

### D.  Conclusion

For the foregoing reasons, Grant-Overton's motion seeking an extension of time (ECF 26) to conduct discovery into personal jurisdiction before responding to NUL's motion to dismiss is GRANTED.  Grant-Overton is AFFORDED to and including September 7, 2020, to conduct discovery into NUL's contacts and communications with FWUL pertaining to her employment and subsequent termination.

SO ORDERED.

Entered this 6th day of July 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge