UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| COSETTE GRANT-OVERTON. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.1:20-CV-0128 HAB-SLC |
| ) | |
| FORT WAYNE URBAN LEAGUE, INC., ) | |
| and NATIONAL URBAN LEAGUE, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____) | |

**OPINION AND ORDER**

Plaintiff, Cosette Grant-Overton, initiated the present discrimination suit in state court alleging violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e), 42 U.S.C §1981, the Age Discrimination in Employment Act and the Family Medical Leave Act. (ECF No. 4). Plaintiff asserts that she was wrongfully terminated from her position as Chief Executive Officer of Fort Wayne Urban League ("FWUL"). FWUL removed the action to federal court on the basis of federal question jurisdiction. Thereafter, Defendant National Urban League ("NUL") moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (ECF No. 17). The parties conducted jurisdictional discovery and Plaintiff moved for, and was granted leave, to amend her Complaint to assert that Plaintiff was employed jointly by FWUL and NUL. (ECF Nos. 49, 55, 56). NUL has now renewed its Motion to Dismiss for lack of personal jurisdiction (ECF No. 61) with respect to the Amended Complaint. For the following reasons, NUL's Motion to Dismiss will be DENIED.

1

## FACTUAL BACKGROUND

Plaintiff, an African American female, was hired on May 21, 2018, to serve as the CEO of FWUL, a not-for-profit organization located in Fort Wayne, Indiana. NUL is a historic civil rights organization founded in 1910 dedicated to "economic empowerment, equality of opportunity, and social justice." (Decl. of Herman Lessard, Jr., ECF No. 62-1, at ¶ 2). NUL has approximately 90 affiliates serving 300 communities in 36 different states and the District of Columbia. (*Id.* at ¶ 6). FWUL is one of NUL's affiliates and their relationship is governed by a written Affiliate Agreement. (*Id.* at ¶ 7).

Plaintiff alleges she was terminated as CEO on May 2, 2019 and that her termination was the result of race and sex discrimination by FWUL and NUL. (Am. Compl. ¶ 1, ECF No. 56). The Amended Complaint further alleges that FWUL and NUL are joint employers as they were "involved in her hiring and her termination, she had to maintain contact with both NUL and FWUL in her capacity as CEO, she had to correspond with and be accountable to both FWUL and NUL, and she was disciplined and advised by both FWUL and NUL with respect to her responsibilities and operations as CEO for FWUL." (*Id.* at ¶ 3).

Along with her Amended Complaint, Plaintiff attached her thirteen-page EEOC Complaint. It is a fair representation that Plaintiff thoroughly details what she believes is discriminatory conduct by FWUL, whom she specifically names as her employer. (Charge of Discrimination (Charge), ECF No. 56-1 at 1). She asserts that she was subjected to a hostile work environment and retaliation for "refusing to go along with illegal practices regarding financials and by refusing to go along with the covering up of fiscal discrepancies and by reporting those discrepancies to [FWUL's] leadership." (Charge, ¶ I). She alleges that she suffered disparate treatment compared to white men who had served as CEO at FWUL. (Charge, ¶II). She asserts

that she was treated in a hostile manner when she was required to report the gross negligence of the Board of Directors to NUL. Finally, she asserts that she reported a serious health condition to Defendants for which she intended to take FMLA leave when she was eligible under the FMLA but FWUL terminated her 19 days prior to her qualifying to take such leave.

## LEGAL STANDARDS

a. Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. "[A] complaint need not include facts alleging personal jurisdiction." *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000); *Steel Warehouse*, 154 F.3d at 715; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

When a district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see also Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302, 1306 n. 7 (7th Cir. 1988); *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) (stating that a court may receive and weigh affidavits to determine whether it has personal jurisdiction and that, during this preliminary proceeding, "the burden of proof is met by a *prima facie* showing that personal jurisdiction is conferred under the relevant jurisdictional statute"). In evaluating whether the *prima facie* standard has been satisfied, the plaintiff "is entitled to the

resolution in its favor of all disputes concerning relevant facts presented in the record." *Nelson*, 717 F.2d at 1123; *see also RAR*, 107 F.3d at 1275 (stating that the plaintiff "is entitled to have any conflicts in the affidavits resolved in its favor").

    b. **Personal Jurisdiction**

In a federal question case such as this one, a federal court has personal jurisdiction over a defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates Houston*, 623 F.3d 440, 443 (7th Cir. 2010). Congress did not provide for national service of process for either of Plaintiff's claims here. *See Nathan v. Morgan Stanley Renewable Development Fund, LLC*, No. 11 C 2231, 2012 WL 1886440, at *4 (N.D. Ill. May 22, 2012) ("Title VII does not provide for nationwide service of process."); *Cuff v. Trans States Holdings, Inc.,* No. 10 C 1349, 2010 WL 2698299, at *2 (N.D. Ill. July 8, 2010) ("…[T]he FMLA does not provide for nationwide service of process."). Accordingly, this Court has personal jurisdiction over Defendant only if it is amenable to service under Indiana law. Personal jurisdiction under Indiana law "extends to the limits allowed by the Due Process Clause of the Fourteenth Amendment." *Weston v. Big Sky Conference*, 466 F.Supp.3d 896, 905 (N.D. Ill. 2020); *E & A Holdings, LLC v. Leviton Mfg. Co.*, No. 1:18 CV 02400 SEB-MJD, 2018 WL 6659729, at *3 (S.D. Ind. Oct. 24, 2018); Ind. Trial P. Rule 4.4(A).

Federal law recognizes two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 n.8–9 (1984). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros,* 466 U.S. at 416; *Hyatt Int'l,* 302 F.3d at 713. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are

not related to the defendant's forum contacts." *Hyatt Int'l,* 302 F.3d at 713. On the other hand, specific jurisdiction is more limited and exists for controversies that "arise out of" or "relate to" a defendant's forum contacts.

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "[T]he nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012).

To be subject to specific jurisdiction, a defendant need only have sufficient "minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks omitted). Courts look to the defendant's "conduct and connection with the forum State" to determine if he should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

## **DISCUSSION**

As indicated, NUL's motion challenges this Court's exercise of personal jurisdiction over it. NUL contends there is no basis for the Court to exercise either general or specific jurisdiction, as Grant-Overton's claims arise from her employment by FWUL, one of NUL's 90 affiliates, and not from any actions of NUL. NUL emphasizes that under its Affiliate Agreement with FWUL,

FWUL has certain reporting obligations to NUL and NUL has the right to conduct periodic audits of FWUL, but FWUL has its own board of directors, makes its own employment and operational decisions independent of NUL, and bears the sole responsibility for its own day-to-day operations. NUL contends that it did not participate in FWUL's decision to hire or fire Grant-Overton and did not control any aspect of her employment by FWUL.

Although she makes arguments in favor of both general and specific jurisdiction, the thrust of Plaintiff's proposed basis for jurisdiction is NUL's specific contacts with Indiana as it relates to her employment at FWUL. She asserts that NUL participated in the decisions of its Fort Wayne affiliate with respect to the hiring process, controlled the terms and conditions of employment and, ultimately, shared in the decision-making for her discipline and termination. Plaintiff claims that she regularly interacted with NUL, NUL provided input into her job duties and functions as CEO, NUL was involved in FWUL board meetings, provided oversight over the board meetings, and engaged in "direct interference" with FWUL's personnel matters. She further asserts that "NUL provides oversight and authority over its Affiliates, including FWUL" and that NUL "exercises a presence in the state of Indiana by its oversight and communications with FWUL." (ECF No. 69 at 3). Because the Court agrees with Plaintiff that she has set forth a *prima facie* case for specific jurisdiction sufficient to defeat NUL's motion to dismiss, the Court shall cabin its analysis solely to a discussion of specific jurisdiction.[1]

---

[1] If the Court did assess general personal jurisdiction, it would agree with NUL that it is not present under the facts here. NUL is incorporated in New York with its principal place of business in New York City. The Supreme Court has identified only two places where a corporation easily qualifies as "at home": (1) the State of its incorporation; and (2) the State where it maintains its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Any additional bases for general jurisdiction "would have to meet the stringent criteria laid out in *Goodyear* and *Daimler*," which "require more than the substantial, continuous, and systematic course of business that was once thought to suffice." *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783

To establish specific personal jurisdiction, it is the defendant's "suit-related" conduct that must create the substantial connection with the forum state. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), as corrected (May 12, 2014). "Specific personal jurisdiction grows out of 'the relationship among the defendant, the forum, and the litigation.'" *Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 832 (N.D. Ill. 2018) (citation omitted). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Marketing, LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (internal quotations omitted). In other words, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Id.* (internal quotations omitted).

Plaintiff has filed an affidavit along with a slew of attachments (ECF No. 47-2 through ECF 47-21) which she asserts meet her burden of establishing a *prima facie* case for specific jurisdiction. This Court has reviewed this evidence and, while most of it does nothing more than confirm NUL's oversight authority of its affiliates under its Affiliate Agreements, there are several facts, when all inferences are resolved favorably to the Plaintiff, that are particularly relevant to the suit-related conduct in this case, i.e., the allegations that NUL was involved in employment related decisions of its affiliates and, in particular, the Plaintiff.

The most convincing of the attachments is FWUL's interrogatory responses. (ECF No. 47-17). In those responses, FWUL states that its representatives communicated with NUL officials Jacqueline Avery-McMillan (Vice President of Regional Affiliate Operations), Wayne Rock (Vice

---

F.3d 695, 698 (7th Cir. 2015). Here, the record would not support a conclusion that NUL is "at home" in Indiana.

7

President of Regional Affiliate Operations), and Herman Lessard (Senior Vice President of Affiliate Services) "regarding the interview/selection process of Plaintiff as CEO of Defendant FWUL." The response further states:

> Communications between Defendant FWUL and Defendant NUL regarding the interview/selection process of Plaintiff as CEO of Defendant would have occurred between February 2018 and May 2019. Many of these communications were verbal, and predominantly regarding the hiring process required by Defendant NUL and coordinating interviews with the NUL of the three final candidates…

(ECF No. 47-17 at 3). Paragraph (c) of the response states (1) FWUL established a selection committee and posted the Fort Wayne CEO position locally; (2) FWUL sent the post to NUL who, in turn, sent the post to all of its affiliates; (3) NUL fielded some resumes in response to its posting and forwarded those to FWUL; (4) FWUL narrowed down the results, selected five finalists, conducted interviews via the selection committee, and sent the top 3 finalists to NUL for certification; (5) NUL certified two of the three finalists. (*Id.* at 4). Finally, the response to interrogatory 11 is most damning:

> Marlon Wardlow and Matthew Kelley, Directors of Defendant FWUL communicated with Herman Lessard, Jacqueline Avery McMillan and Wayne Rock of Defendant NUL with respect to Plaintiff's hiring, selection and termination.

(*Id*. at 8-9). Read favorably to Plaintiff, what these responses establish is that NUL, at a minimum had some oversight of the employing process utilized by FWUL and provided guidance to FWUL in its employment decisions. At a maximum, NUL may have had some ultimate decision-making authority or influence over Plaintiff's employment for which it could reasonably foresee answering for in an Indiana court if Plaintiff's employment went awry.

Plaintiff has provided additional evidence as well, albeit not as compelling as the prior interrogatory responses that further strengthen this Court's view that she has met her evidentiary burden. Plaintiff submitted email correspondence from an advisor to the FWUL Board which

indicates "National office of the Urban League recognized chronic problems and insisted on replacing its long-time local executive director. Cosette Grant-Overton is the replacement." (ECF No. 47-4 at 2). Again, the reasonable inference to which Plaintiff is entitled is that NUL involved itself in the employment affairs of FWUL and may have had some role as a decision-maker when it came to Plaintiff's employment.

NUL argues that a foreign corporation's "mere oversight" of its subsidiary or affiliate cannot give rise to specific jurisdiction and there is nothing about the contacts it had with Indiana that warrant it being haled into court here. NUL is specifically referencing Plaintiff's reliance upon an April 2019 audit of FWUL's operations conducted by NUL representatives in Fort Wayne and the recovery plan of action NUL formulated in response to that visit. It asserts that the contacts Plaintiff asserts that stem from its oversight obligations under the Affiliate Agreements are simply too random and fortuitous to require it to be haled into court here. Further, it points out that the same interrogatories that give rise to the Court's above conclusion regarding specific jurisdiction also contain statements that FWUL had the sole decision-making authority with regard to Plaintiff's employment.

The Court is sympathetic to NUL's view, and is in agreement with NUL that Plaintiff has an uphill battle to climb on the ultimate merits of her position that NUL can be said to have been her employer or engaged in conduct relating to her employment that was discriminatory. However, at this early stage of the litigation and without the benefit of an evidentiary hearing, the Court is compelled to conclude that the conflicts in the evidence are sufficient for Plaintiff to meet her burden of making a prima facie case that specific personal jurisdiction exists. *See Purdue Research Found.*, 338 F.3d at 782 (holding that while affidavits trump the pleadings, all facts disputed in the affidavits will be resolved in the plaintiff's favor). Certainly, this evidence is not overwhelming;

indeed, NUL may very well demonstrate at summary judgment that it had no hand in the Plaintiff's employment with FWUL and any communications it had with FWUL regarding Plaintiff's employment were merely advisory or part of its oversight responsibilities. But, for now, Plaintiff is not required to prove her case; she must only make a *prima facie* showing that personal jurisdiction is warranted. See *Alexander v. Take-Two Interactive Software, Inc.*, No. 18-CV-966-SMY, 2020 WL 1287734, at *2 (S.D. Ill. Mar. 18, 2020) (holding that at the pleading stage when personal jurisdiction is questioned, plaintiffs are not required to prove their underlying case, only make out a *prima facie* case of personal jurisdiction.). She has done so. Reading the record favorably to the Plaintiff *at this stage*, the Court concludes that Plaintiff has met her burden. NUL, through its communications, input, and contacts with FWUL in Indiana, purposely directed activities in Indiana relating to Plaintiff's employment and Plaintiff's injury allegedly arose from those forum-related contacts. As such, exercising jurisdiction over NUL does not offend the traditional notions of fair play and substantial justice. Accordingly, NUL's Motion to Dismiss is DENIED.[2]

SO ORDERED on April 20, 2021

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[2] The Court declines NUL's invitation for the Court to decide on a Fed.R.Civ.P. 12(b)(2) motion whether the preliminary evidence submitted leads to the conclusion that NUL is a joint employer of the Plaintiff. That is a decision to be made after development of the record through full discovery pursuant to a properly filed and supported Fed. R. Civ. P. 56 motion.